COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Malveaux and Senior Judge Annunziata
Argued at Alexandria, Virginia

BEN POURBABAI

              MEMORANDUM OPINION* BY
v.   Record No. 1532-17-4     JUDGE ROSEMARIE ANNUNZIATA
              AUGUST 21, 2018
CHRISTINE POURBABAI


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jan L. Brodie, Judge

Jonathon A. Moseley for appellant.

Fred M. Rejali for appellee.


Ben Pourbabai (husband) appeals the circuit court's orders relating to his divorce from

Christine Pourbabai (wife).  Husband argues that the circuit court erred by (1) finding that the

parties separated on or about December 1, 2015; (2) finding that the circuit court had jurisdiction

over the divorce because the parties were not actual bona fide residents and domiciliaries of

Virginia for at least six months preceding the filing of the divorce suit; (3) misinterpreting Code

§ 20-97 and its requirement that a party be a domiciliary and a bona fide resident of Virginia;

(4) finding that "storing personal property in a room makes a residence;" (5) finding that the circuit

court had subject matter jurisdiction over child custody and visitation; (6) relitigating equitable

distribution when the Court of Familial Pleas of the Islamic Republic of Iran already had decided

equitable distribution on October 16, 2016; (7) not admitting the Iranian court order into evidence

and "not reconsidering that decision;" (8) failing to consider the equitable distribution factors and

that on October 16, 2016, the Iranian court already had ordered husband to pay wife "$500,000 to

  * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

$700,000;" (9) failing to consider the equitable distribution factors and that wife's "$3.5 million inheritance inside Iran, which was converted into a marital asset when . . . [h]usband sold real estate and borrowed against real estate at [w]ife's request to pay [w]ife's 35% inheritance tax in Iran in return for [w]ife's promise to share the inheritance with [h]usband;" (10) ordering the sale of all of the real estate in Virginia and Washington, D.C. as opposed to "(a) entering a monetary award or (b) granting [wife's] request to sell some real estate while leaving the rest to [husband];" (11) determining that all of the real estate was marital property; (12) "refusing to order a new trial on equitable distribution after [husband] had to fire his attorney for failing to present his evidence;" (13) not admitting husband's exhibits and evidence or "accommodating" his request to re-open his case after firing his attorney; (14) denying his request to present evidence from his accountant, who was subpoenaed but did not appear at the hearing, after the trial was concluded; (15) not enforcing the post-nuptial agreement between the parties "or at least considering it in equitable distribution;" (16) awarding sole custody of the children to wife and "refusing to admit other evidence of [w]ife's suicide attempts, psychological problems, false police reports concocting non-existent altercations, and mental instability;" (17) "denying [husband] visitation with his children conditioned on an anger management evaluation (A) restricted to a particular consultant (B) which [husband] cannot afford (C) without any evidence to justify such a requirement;" and (18) limiting husband's ability to present his case.[1]  We find no error, and affirm the decision of the circuit court.

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

---

[1] On July 9, 2018, husband filed "Appellant's Supplementary Affidavit on Transcript of Circuit Court's Reasons for Order."  As this pleading was not timely filed, the Court will not consider it.

Menninger v. Menninger, 64 Va. App. 616, 618, 770 S.E.2d 232, 233 (2015) (quoting Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 834 (2003)).

Husband and wife married on December 22, 2002, and three children were born of the marriage. On December 15, 2015, wife filed a complaint for divorce, requesting a divorce based on the grounds of cruelty and constructive desertion. In the complaint, wife alleged that she and husband were bona fide residents and domiciliaries of Virginia and that husband had been a bona fide resident and domiciliary of Virginia for more than six months preceding the filing of the complaint. On January 29, 2016, husband filed an answer to the complaint for divorce and admitted the statements that they were bona fide residents and domiciliaries of Virginia. On February 12, 2016, husband filed a counterclaim for divorce and stated that he was a bona fide resident and domiciliary of Virginia and had been for more than six months preceding the filing of the suit.

On February 7, 2017, the parties appeared before the circuit court to determine custody and visitation. After hearing the evidence and argument, the circuit court issued its ruling from the bench on February 8, 2017. The circuit court considered the Code § 20-124.3 factors and awarded sole legal and physical custody of the children to wife. The circuit court expressed its "grave concerns about the psychological well-being" of husband and ordered him "to undergo a full-scale psychological evaluation by Dr. Edward Farber." The circuit court did not order visitation, but indicated that husband could file a motion for visitation after the court received the psychological evaluation and a report from the guardian *ad litem*, who was appointed at the hearing. The circuit court ordered that husband would be responsible for the costs associated with the psychological evaluation and the guardian *ad litem*. On March 17, 2017, the circuit court entered an order reflecting its ruling.

On March 17, 2017, husband filed a motion to dismiss the case, arguing that the court did not have subject matter jurisdiction because the parties were not residents of Virginia for at least six months prior to the filing of the complaint for divorce. Husband filed amended motions, and on May 8, 2017, the circuit court heard husband's motion to dismiss. Husband argued that in September 2013, the parties moved to Canada for wife to obtain her master's degree in business administration from the University of Toronto. Husband explained that he and wife found renters to live in the former marital residence in Virginia from April 1, 2014 until April 1, 2016. However, the renters vacated the property before the lease expired, and the house was vacant when the parties returned to Virginia in June 2015. Wife testified that they kept personal property in one of the rooms in the house while they were in Canada. Furthermore, wife asserted that husband maintained his residence in Virginia while she and the children lived in Canada. Wife explained that husband spent "more than two weeks a month" in Virginia because he had to manage their rental properties. On cross-examination, husband admitted that he frequently traveled in and out of Canada while wife attended school.

Wife presented evidence of their intent to maintain their domicile and residence in Virginia. While they were in Canada, both husband and wife maintained Virginia driver's licenses. Wife continued to receive mail at the former marital residence in Virginia. While wife attended school in Canada, husband and wife paid taxes to the Commonwealth of Virginia and the United States. On their tax returns, both parties claimed to be Virginia residents. Husband admitted that he never filed a Canadian tax return because "[w]e weren't residents or Canadian citizen[s]." Wife testified that she never asked for residency in Canada and explained that, when she went to the University of Toronto, she received a student visa and her children received visitor's visas.

The parties offered contradictory testimony about their future plans after wife graduated. Husband testified that they intended to stay in Canada after wife graduated, while wife testified that she intended to return to the United States for employment and that she declined the employment offers in Canada she received as a result. When wife completed her coursework in October 2014 and the parties' children finished the school year, the parties left Canada and returned to the former marital residence in Virginia on June 30, 2015, bringing with them all their furniture.

From July 5, 2015 through August 27, 2015, wife and the children visited Iran. Husband testified that wife went to Iran to "look for job opportunities" and "explore living conditions," a view contradicted by a contemporaneous email husband wrote, stating the family was going to Iran for "summer vacation." Wife also testified that she went for a vacation, as evidenced by her purchase of round-trip airline tickets with a return date before school started. Furthermore, husband admitted that since July 1, 2015, he has lived in and been a resident of the Commonwealth of Virginia. Wife testified that she has considered herself a resident and domiciliary of Virginia for the last fourteen years.

After hearing the parties' evidence and argument, the circuit court found that "both parties maintained their home in Great Falls as their permanent abode;" in short that both husband and wife are permanent citizens of the United States and that they were residents and domiciliaries of Virginia in the six months preceding the filing of the divorce suit. The circuit court noted that both parties filed Virginia and federal tax returns and, on those tax returns, they listed the former marital residence as their address. The circuit court accepted wife's testimony that they went to Canada temporarily and, that "once the wife finished her class work, the plan was to stay until the children finished school and returned the day after school ended." Based on the evidence presented, the circuit court, at the conclusion of the hearing on May 8, 2017,

- 5 -

entered an order dismissing husband's motion to dismiss for lack of jurisdiction. Husband filed a motion to reconsider, which the circuit court denied by order entered on July 24, 2017.

On June 20 and 21, 2017, the circuit court heard evidence on the outstanding issues of grounds for divorce, equitable distribution, spousal support, child support, and attorney's fees. After hearing the evidence and the parties' arguments, the circuit court took the matter under advisement.

On June 26, 2017, the circuit court issued its ruling from the bench.[2] After reviewing the factors in Code § 20-107.3, the circuit court found that the real estate in Virginia and Washington, D.C. was marital property and ordered its sale. The circuit court appointed a commissioner to facilitate the sale of the real estate and ordered that the net proceeds be divided equally between the parties. The circuit court further ordered a reservation of spousal support to wife for six years and three months and awarded her child support pursuant to the statutory guidelines. On July 26, 2017, the circuit court entered the final decree of divorce reflecting its rulings and attached husband's objections, filed July 21, 2017.

On July 19, 2017, husband filed several post-trial motions, including a "Motion to Dismiss due to Res Judicata, Lack of Jurisdiction, Fraud upon the Court, and for Award of Attorneys' Fees and Memorandum of Points & Authorities in Support Thereof," a "Motion to Proffer Evidence and Re-Open the Record and for Admission of Evidence Excluded by Court's Technical Malfunction and Memorandum of Points & Authorities," and a "Motion for New Trial on Equitable Distribution and Memorandum of Points & Authorities in Support Thereof." On July 20, 2017, husband filed a "Motion to Reconsider Jurisdiction of the Court over Child

_____

[2] The transcript from the June 26, 2017 hearing was included in the record, but not the appendix.

- 6 -

Custody and Visitation Aspects of Divorce and Memorandum of Points & Authorities in Support Thereof" and a "Motion for Clarification of Equitable Distribution Decision."

On August 1, 2017, the circuit court suspended the judgment to address husband's post-trial motions. Wife filed responsive pleadings, and husband filed amended pleadings.

In his motion to dismiss, husband argued that wife had instituted divorce proceedings in Iran in 2016. He alleged that an Iranian court had issued an equitable distribution ruling, and therefore, Virginia did not have jurisdiction over the parties' divorce. On August 31, 2017, the circuit court heard argument on husband's motion to dismiss. On the same day, the circuit court entered an order denying husband's motion to dismiss and ending the stay. On September 19, 2017, husband filed a motion to reconsider.

On September 5, 2017, the circuit court entered orders addressing two of husband's other motions; it held that husband's motion for clarification was moot and denied husband's motion for a new trial. On September 8, 2017, the circuit court denied husband's motion to proffer evidence and re-open the record regarding the custody and visitation matters. On September 19, 2017, husband filed a motion to reconsider the custody and visitation matters, which the circuit court denied on September 27, 2017. On September 20, 2017, husband also filed a motion for a new trial and alleged that the parties had a post-nuptial agreement.

On September 21, 2017, husband filed a notice of appeal, and on September 22, 2017, he filed an amended notice of appeal. On October 2, 2017, the circuit court denied husband's motions for reconsideration and for a new trial because the circuit court no longer had jurisdiction over the matters following husband's appeal.

ANALYSIS

*Jurisdiction - Date of Separation*

Husband argues that the circuit court erred in granting the divorce because the parties had not lived separate and apart for more than one year prior to the filing of the suit.

On December 15, 2015, wife filed the complaint for divorce and requested that she be "awarded a divorce *a mensa et thoro* ('from bed and board') upon the stated grounds of cruelty and constructive desertion to be merged in one year into a divorce *a vinculo matrimonii* ('from the bonds of matrimony')." At the equitable distribution hearing on June 20, 2017, wife indicated that she no longer sought a divorce based on fault grounds. Instead, wife made an oral motion to amend the complaint and asked for a divorce based on living separate and apart for more than one year. Husband did not object. Wife presented evidence that she and husband had been living separate and apart since December 2015. After considering all the evidence, the circuit court entered the final decree of divorce on July 27, 2017, and granted wife a divorce based on living separate and apart for more than one year.

Code § 20-95 provides that a person may seek a divorce from bed and board based on "cruelty, reasonable apprehension of bodily hurt, willful desertion or abandonment." That statute does not require any period of pre-filing separation. Thus, the circuit court had subject matter jurisdiction over the divorce proceedings. Code § 20-91(9) provides that a person may seek a divorce from his or her spouse after they have lived separate and apart for more than one year. Code § 20-121.02 provides that a party may move for a divorce based on living separate and apart without amending the complaint for divorce. Nothing in these code sections requires that the one-year separation period must occur prior to the filing of the complaint in order for the circuit court to have jurisdiction to enter a final decree of divorce. Code § 20-91(9) provides that a circuit court may decree a divorce "*if and when* the husband and wife have lived separate and

- 8 -

apart without any cohabitation and without interruption for one year." (Emphasis added.) Moreover, Code § 20-121.02 allows a party to amend the grounds for divorce. Here, when the circuit court entered the final decree awarding wife a divorce, the parties had been separated for more than one year.

### Jurisdiction - Bona fide resident and domiciliary of Virginia[3]

Husband argues that the circuit court erred in finding that it had jurisdiction over the divorce, including the equitable distribution and custody and visitation matters, because the parties had not been bona fide residents and domiciliaries of Virginia for six months preceding the filing of the complaint for divorce. Husband asserts that they had lived in Canada from September 2, 2013 until June 30, 2015, and that wife filed her complaint for divorce on December 15, 2015. He contends that they had only lived in Virginia for five and a half months prior to the filing of the complaint.

Code § 20-97 provides, in pertinent part, that "[n]o suit for . . . divorce shall be maintainable, unless one of the parties was at the time of the filing of the suit and had been for at least six months preceding the filing of the suit an actual bona fide resident and domiciliary of this Commonwealth . . . ."

"The issue of subject matter jurisdiction in a divorce proceeding requires a determination of both domicile and bona fide residency. That determination presents a mixed question of law and fact, reviewable on appeal." Blackson v. Blackson, 40 Va. App. 507, 517, 579 S.E.2d 704,

---

[3] In his fifth assignment of error, husband argues that the circuit court "lack[ed] subject matter jurisdiction over child custody and visitation under the Uniform Child Custody Jurisdiction and Enforcement Act." In the argument section of his brief, husband argued the first five assignments of error together; however, he did not address the specifics of the assignment of error concerning the UCCJEA and why the circuit court lacked jurisdiction under the UCCJEA. Therefore, we find that husband waived this assignment of error. See Muhammad v. Commonwealth, 269 Va. 451, 478, 619 S.E.2d 16, 31 (2005) ("Failure to adequately brief an assignment of error is considered a waiver.").

709 (2003).  "On appeal, the fact finding component of that determination is given deference."

Adoteye v. Adoteye, 32 Va. App. 221, 226, 527 S.E.2d 453, 456 (2000).

"To have been an 'actual bona fide resident of this State' . . . means to have had in this State throughout that period an actual bona fide permanent abode, as contradistinguished from a sojourn, or transitory abode . . . ."  Id. at 225, 527 S.E.2d at 455 (quoting Hiles v. Hiles, 164 Va. 131, 137, 178 S.E. 913, 915-16 (1935)).

> If a person, who has theretofore in good faith established and is then maintaining a permanent abode in the State, goes from the State, and while absent therefrom continuously in good faith maintains that, or some other place or locality in the State, as and for his permanent abode, the establishment of a sojourn, or transitory abode, outside the State will not (so long as his physical residence elsewhere is essentially transitory or a sojourning) put an end to his being an "actual *bona fide* resident of this State" within the meaning of [Code § 20-97].  This is true even though his absence from the State be of long duration.

Blackson, 40 Va. App. at 518, 579 S.E.2d at 709 (quoting Hiles, 164 Va. at 137-38, 178 S.E. at 916).

"There must be some evidence of concurring acts or forbearances to act which tend to show the *actual* continued maintenance in good faith of some place or locality in Virginia as and for his permanent abode."  Adoteye, 32 Va. App. at 226, 527 S.E.2d at 455 (quoting Hiles, 164 Va. at 138, 178 S.E. at 916).  "Neither the unexpressed nor the mere expressed intention to so maintain a place or locality in Virginia as his permanent abode, is alone sufficient to constitute the maintenance thereof as such."  Id. (quoting Hiles, 164 Va. at 138, 178 S.E. at 916).

"Domicile contemplates living in a place with the intent to remain there permanently or for an indefinite period of time."  Id. at 226, 527 S.E.2d at 455-56 (quoting Rock v. Rock, 7 Va. App. 198, 202, 372 S.E.2d 211, 213 (1988)).  "Mere change of place is not change of domicile.  Mere absence from a fixed home, however long continued, cannot work the change. There must be the [intention] to change the prior domicile for another. . . .  Until the new

- 10 -

domicile is acquired, the old one remains . . . ." Blackson, 40 Va. App. at 517-18, 579 S.E.2d at 709 (quoting Cooper's Adm'r v. Commonwealth, 121 Va. 338, 347, 93 S.E. 680, 682 (1917)).

Here, the circuit court found that both parties were bona fide residents and domiciliaries of Virginia and that they had "maintained their home in Great Falls as their permanent abode." The circuit court held that their absence from Virginia, while wife studied in Canada, was a "temporary sojourn." The circuit court concluded that the parties' intent was that Virginia remain their permanent abode, as evidenced by retaining the former marital residence and paying taxes in Virginia and the United States. They listed the former marital residence as their address on their tax returns. The circuit court credited wife's testimony that she went to Canada on a two-year student visa and, once the children finished school, her intent was to return to Virginia, which she did.[4] Wife also testified that husband visited them in Canada, but that he returned to Virginia for more than two weeks each month to maintain their rental properties. Furthermore, the circuit court found that the parties kept some of their personal property in the former marital residence, even when it was rented. In addition, the parties maintained their Virginia driver's licenses, and wife continued to receive mail at the former marital residence. The totality of this evidence supports the circuit court's conclusion that the parties were bona fide residents and domiciliaries of Virginia for at least six months preceding the filing of the complaint for divorce.

*Iranian court order*

Husband argues that the circuit court erred by failing to admit into evidence a proffered document purporting to be an order of an Iranian court and by relitigating equitable distribution

---

[4] Husband asserts that the parties submitted applications for permanent residency in Canada, but wife testified that it was not her signature on the applications. The circuit court found that wife did not sign the document and held that it was not giving any weight to the applications. See Layman v. Layman, 62 Va. App. 134, 137, 742 S.E.2d 890, 891 (2013) ("It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness' testimony." (quoting Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*))).

- 11 -

after the equitable distribution issue had already been decided in Iran. On July 19, 2017, husband filed a motion to dismiss and a memorandum, in which he alleged that the equitable distribution aspect of this case was barred by *res judicata* because on October 16, 2016, a court in Iran had awarded wife the equivalent of $500,000 based on their separation. Husband filed with the circuit court several documents purporting to be the Iranian court order, as well as several translations. The circuit court heard argument on husband's motion to dismiss on August 31, 2017. At the beginning of the hearing, the circuit court asked husband if he had certified copies of the Iranian court order and explained that the "ones that were attached [to the pleadings] only had the certification of the translation, not the accuracy nor the authenticity of the documents." Husband admitted that he did not have anything other than what was previously attached to his pleadings. Husband also attempted to introduce into evidence a copy of a document in a foreign language that was purported to be the Iranian court order. The document was in a foreign language, and the certification from the Pakistani Embassy, not the court from which the order came, indicated that no original document had been produced. On those grounds, the circuit court sustained wife's objection to the admission of the document.[5] At the conclusion of the hearing, the circuit court specifically addressed husband's claim relating to property in Iran, noting husband's testimony to that effect. However, no evidence was presented by either party relating to property in Iran and no orders regarding Iranian property had been made in the course of the proceedings. No basis for granting husband's motion to dismiss having been proved, the motion was denied.[6]

---

[5] That document was not included in the record as a refused exhibit.

[6] On September 19, 2017, husband filed a motion to reconsider and submitted another copy of the Iranian court order with a certification from the U.S. Interests Section of the Swiss Embassy in Tehran. The circuit court did not consider this latest document and certification because as stated in its October 2, 2017 order, it lost jurisdiction over the matter after husband appealed.

"Generally, the admissibility of evidence 'is within the broad discretion of the trial court, and an [evidentiary] ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Surles v. Mayer, 48 Va. App. 146, 177, 628 S.E.2d 563, 578 (2006) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)) (brackets in original).

Several statutes are pertinent to the resolution of this issue. "The records of any judicial proceeding and any other official record of any court of another . . . country . . . , shall be received as prima facie evidence provided that such records are certified by the clerk of the court where preserved to be a true record." Code § 8.01-389(A1).

Code § 8.01-389(E) provides:

> The use of the term "copy teste," "true copy," or "certified copy" or a substantially similar term on a certification affixed or annexed to a copy of an official record maintained by a clerk of court that bears the signature of the clerk or any deputy clerk, and that has the name of the court where such record is preserved on the document or on the certification, shall be prima facie proof that such record is certified by such clerk to be a true copy of the official record kept in the office of the clerk. Nothing herein shall be construed to require or prevent a clerk from using an official seal or prevent a clerk from using any other acceptable method of certification for a court record.

Furthermore, Code § 8.01-391(B) states:

> If any department, division, institution, agency, board, or commission of this Commonwealth, of another state or country, or of the United States, or of any political subdivision or agency of the same, acting pursuant to the law of the respective jurisdiction or other proper authority, has copied any record made in the performance of its official duties, such copy shall be as admissible into evidence as the original, whether the original is in existence or not, provided that such copy is authenticated as a true copy either by the custodian of said record or by the person to whom said custodian reports, if they are different, and is accompanied by a certificate that such person does in fact have the custody.

In this case, the circuit court held that the proffered Iranian court order was not properly certified. The documents attached to husband's pleadings do not comply with Code §§ 8.01-389

- 13 -

or -391.  The documents do not include a certification by the clerk of court that they are a "true record," as required by Code § 8.01-389(A1).  Furthermore, the documents are not true copies as defined by Code § 8.01-389(E), and were not authenticated as true copies by the custodian of the record as required by Code § 8.01-391(B).  Therefore, the circuit court did not abuse its discretion in refusing to admit the proffered Iranian court order into evidence.  Since the circuit court did not abuse its discretion in refusing to admit the Iranian court order, it could not consider the document for *res judicata* or equitable distribution purposes, and neither can this Court.[7]

*Equitable distribution*

Husband challenges several of the circuit court's rulings regarding equitable distribution.  "On appeal, 'decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed unless plainly wrong or unsupported by the evidence.'"  Layman v. Layman, 62 Va. App. 134, 137, 742 S.E.2d 890, 891 (2013) (quoting McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994)).

Husband argues that the circuit court failed to consider the equitable distribution factors and, specifically, the fact that wife received a $3.5 million inheritance during the marriage and he paid the inheritance tax wife owed under Iranian law by selling and borrowing against real estate he owned.

During the equitable distribution hearing, husband testified that after wife's father died in 2013, wife and her mother "inherited a multi-million-dollar portfolio of real estate" and, pursuant to Iranian law, they had to pay a "35% inheritance tax immediately, or lose it."  Husband

---

[7] Moreover, the circuit court noted that it never addressed property in Iran and that neither party presented any evidence about Iranian property.  Furthermore, wife's counsel informed the circuit court that nothing was provided in discovery that indicated that there was property in Iran.

- 14 -

explained that he sold one of his real estate properties in 2014 and used the proceeds to pay toward the inheritance tax. Husband did not offer into evidence any documentation to support his statements, nor did he question wife about the inheritance.

In addition to the inheritance issue and husband's claim the circuit court erred in not considering it in making its equitable distribution award, husband argues that the circuit court also erred in classifying the Virginia and Washington, D.C. real estate as marital property. The circuit court's order to sell all the real estate it classified as marital, instead of entering a monetary award or granting wife's request to sell some of the real estate and award the remaining parcels to husband, is also challenged by husband. Husband contends that "a forced sale will result in a net loss after paying commissions and costs."

During the equitable distribution hearing, both parties presented evidence about the real estate properties, which included wife's demonstrative exhibits. During her closing argument, wife suggested that two of the properties be sold and that husband receive the remaining three properties. The circuit court asked husband multiple times during his closing argument for his position about the real estate, but he never responded to the court's questions.

The circuit court ruled from the bench on June 26, 2017. After considering each of the Code § 20-107.3(E) factors and discussing the factors with the parties, the circuit court explained, "If I don't mention a factor, it's not because I haven't considered it, and if after I've finished delivering my decision, if you have any questions about the weight that I gave a particular factor, please don't hesitate to ask me."

The circuit court summarized the evidence presented regarding the five real estate properties and personal property. For each property, the circuit court determined when the property was purchased, how it was titled, its fair market value, its outstanding mortgage balance, and estimated equity. The circuit court then appointed a commissioner of sale to

- 15 -

facilitate the sale of all of the real estate properties. The circuit court ordered that the sales proceeds be divided equally and that any rental profits, likewise, be divided equally. While recognizing that the parties' income was "fairly consistent" from 2011 to 2014, the circuit court noted that, in 2015, the parties' tax return indicated "they operated at a loss with no income showing on the tax return." The circuit court ordered the sale of the properties "because it's unclear if there is some game playing here or whether all the properties are rented at their maximum value."

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Fadness v. Fadness, 52 Va. App. 833, 841, 667 S.E.2d 857, 861 (2008) (quoting Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990)). "The General Assembly has given circuit courts the discretion to determine the equitable distribution of marital assets in connection with a divorce. Its discretion is limited only in that the circuit court must consider all of the factors in Code § 20-107.3(E)." Id. at 842, 667 S.E.2d at 862.

In this case, the circuit court reviewed all the evidence regarding the parties' property, including husband's testimony about wife's inheritance. The circuit court found wife's evidence was more credible and rejected husband's testimony regarding the inheritance, stating, "For the most part, I did not find [husband] to be credible or forthcoming . . . ."

"It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness' testimony." Layman, 62 Va. App. at 137, 742 S.E.2d at 891 (quoting Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc)). The circuit court did not abuse its discretion in rejecting husband's testimony about the inheritance.

Husband also challenges the equitable distribution award on the ground that the circuit court improperly failed to consider his evidence. As discussed above, the circuit court did not err in refusing to admit husband's evidence. Rather, as the circuit court advised husband, "Your evidence did not come in because it was not presented. It's not because I kept it out, sir. You did not present it properly nor did your attorney." In short, husband had the opportunity to present his case and, in fact, testified at length at the equitable distribution hearing.

The record clearly indicates that the circuit court considered the Code § 20-107.3(E) factors and reviewed the factors with the parties. The circuit court explained that it found their monetary and nonmonetary contributions to the family and to the acquisition, care, and maintenance of the marital property to be equal. The circuit court considered the duration of the marriage and the parties' ages. It found that the parties appeared to be in good physical and mental health, although husband had "trouble following the court's admonishment" and was ordered to submit to a psychological evaluation before he would be allowed to have visitation with the children. The circuit court reviewed the circumstances of the dissolution of the marriage and found that "this marriage was not built on love or trust." Then, the circuit court classified and valued the marital property and debt. The circuit court indicated that it considered the liquid and nonliquid character of the property and found there was no evidence presented as to the tax consequences. Based on the facts and circumstances of the case, the circuit court decided to sell the real estate. It gave husband several opportunities to tell the court his position on the real estate, but he never responded to the court's questions. Therefore, in consideration of the assignments of error presented, the circuit court did not err.

*Motion for new trial and to re-open the evidence*[8]

Husband argues that the circuit court erred when it refused to order a new equitable distribution trial and admit his exhibits and evidence after he informed the court on the second day of the trial that he had fired his attorney.

The circuit court scheduled a two-day equitable distribution trial. On June 20, 2017, the parties presented their evidence and, at the end of the day, both parties rested their cases. On June 21, 2017, the parties returned to present their closing arguments. At the beginning of the hearing, husband's counsel informed the circuit court that husband wished to proceed *pro se* and make his own closing argument. Husband did not request a continuance or move for a new trial.

Before husband began his closing argument, the circuit court reminded him that "there [was] no new evidence at this stage, that this is only argument on what evidence has been presented." Husband was permitted to present his closing argument, and the circuit court asked him several times for his position about the real estate. Husband refused to answer the question and insisted upon presenting additional evidence, which the circuit court denied. The circuit court explained that husband was "going to have to argue with the evidence that has been presented." Husband repeatedly tried to tell the court why he fired his attorney, but the circuit court told him that it did not need to know his reasoning because it was a matter between him and his attorney.

---

[8] In his fifteenth assignment of error, husband argues that the circuit court abused its discretion "by not enforcing the post-nuptial agreement between the parties or at least considering it in equitable distribution." In the argument section of his brief, husband presented the twelfth, thirteenth, fourteenth, and fifteenth assignments of error together; however, he did not address the specifics of the fifteenth assignment of error and why the circuit court abused its discretion by not enforcing the post-nuptial agreement or considering it during equitable distribution. Therefore, we find that husband waived this assignment of error. See Muhammad, 269 Va. at 478, 619 S.E.2d at 31.

- 18 -

Husband complained that, on the previous day, he had not been allowed to present the 116 documents he identified as exhibits; however, his counsel had not moved the exhibits into evidence. Husband's request to reopen the hearing, arguing that the court had "to have a hearing on this [sic] 116 exhibits," was denied, the court reiterating that the evidentiary hearing had concluded. Husband responded, "That is your choice, Your Honor, I am not questioning Your choice, Your Honor."

Shortly thereafter, husband again attempted to present his 116 exhibits, but the circuit court repeated that the trial was over and asked him one last time for his position about the five properties that were at issue in its determination of the equitable distribution issues. When husband did not answer the question, the circuit court concluded the hearing and stated that it would announce its decision from the bench on June 26, 2017. Husband then asked the circuit court if it would allow him to speak and present his exhibits. The circuit court stated, "Sir, let me explain something, you are not a lawyer and you don't understand the rules of the Circuit Court. We have had the hearing, we have gone all the way through rebuttal, and this was for closing arguments only, not presentation of evidence." Husband complained that none of his witnesses had appeared the previous day. The circuit court responded, "Sir, it was tried, and you didn't do it well either. We are in recess." The circuit court pronounced its judgment on June 26, 2017 and memorialized the ruling in an order entered on July 26, 2017.

On July 19, 2017, husband filed a post-trial motion for a new trial so that he could present additional evidence. On September 5, 2017, the circuit court denied husband's motion for a new trial.

"Motions to reopen a hearing to take further evidence are matters within the court's discretion." Shooltz v. Shooltz, 27 Va. App. 264, 269, 498 S.E.2d 437, 439 (1998). "Usually, such motions are based upon error apparent on the face of the record, or for the purpose of

introducing after-discovered evidence." Id. at 269, 498 S.E.2d at 439-40 (quoting Kirn v. Bembury, 163 Va. 891, 901, 178 S.E. 53, 56 (1935)). "[C]ourts have also included among the factors to be applied in the analysis whether a party seeking rehearing had 'ample opportunity to present evidence' at the initial hearing . . . ." Id. at 269 n.1, 498 S.E.2d at 440 n.1 (quoting Rowe v. Rowe, 24 Va. App. 123, 144, 480 S.E.2d 760, 770 (1997)); see also Holmes v. Holmes, 7 Va. App. 472, 480, 375 S.E.2d 387, 392 (1988).

In this case, husband had "ample opportunity" to present his evidence on June 20, 2017. The circuit court did not abuse its discretion by refusing to allow husband to present additional evidence on June 21, 2017, after both parties had rested their cases and were scheduled to present closing arguments.

In addition, husband argues that the circuit court abused its discretion by not scheduling a new trial to allow his accountant to testify. However, husband told the circuit court that the accountant had not been present for the trial, and he rested his case without asking for a continuance. Husband did not proffer the accountant's testimony. "In Virginia, when 'testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer.'" Ray v. Commonwealth, 55 Va. App. 647, 649, 688 S.E.2d 879, 880 (2010) (quoting Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977)). "When an appellant claims a trial court abused its discretion in excluding evidence, we cannot competently determine error – much less reversible error – without a proper showing of what that testimony would have been." Id. (quoting Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006)). Since husband did not proffer the accountant's testimony, this Court is unable to review this argument.

*Custody and visitation*

Husband argues that the circuit court erred by awarding sole custody of the children to wife and denying him visitation with his children until he undergoes a psychological evaluation by Dr. Farber.[9]

"[T]here is a presumption on appeal that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." D'Ambrosio v. D'Ambrosio, 45 Va. App. 323, 335, 610 S.E.2d 876, 882 (2005). "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

The circuit court heard evidence on February 7 and 8, 2017, to determine custody and visitation. At the conclusion of the hearing, the circuit court reviewed the Code § 20-124.3 factors. The circuit court found husband to be "extremely agitated and frequently . . . unable to answer questions of the attorneys in a direct, calm and coherent way." The circuit court explained that the "videos and emails entered into evidence demonstrate that [husband] is capable of extreme hostility towards [wife], and does not communicate with her in a civil way about the children." The circuit court also found that while wife has a "loving and nurturing relationship with her children," husband "exhibits anger and hostility in the presence of his children and rants about their mother." In addition, the circuit court found that there was no evidence that husband was trying to foster a relationship between wife and the children. The

---

[9] Wife argues that husband did not preserve this issue pursuant to Rule 5A:18 because he did not note any objections to the final order. However, husband raised the issue in closing argument, and he filed a motion to reconsider. In a bench trial, an appellant can preserve his issues for appeal in a motion to strike, in closing argument, in a motion to set aside the verdict, or in a motion to reconsider. Lee v. Lee, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991) (*en banc*). Therefore, we find that husband preserved his arguments for appeal.

circuit court expressed "grave concerns about the psychological well-being of [husband] at this time based on his demeanor in Court, the videos in evidence and the emails in evidence." The circuit court awarded sole legal and physical custody of the children to wife. It also ordered husband to undergo a "full-scale psychological evaluation" and appointed a guardian *ad litem*. The circuit court did not award husband any visitation, but advised husband that he could file a motion for visitation after the court received the psychological evaluation and the guardian *ad litem*'s report.

Husband argues that the circuit court's findings were "clearly erroneous [and] against the weight of the evidence." Husband challenges the credibility of wife's testimony and claims that the circuit court did not consider all of his evidence. The circuit court did not credit husband's testimony. See Layman, 62 Va. App. at 137, 742 S.E.2d at 891. "This Court is bound by the credibility findings of the circuit court." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 339, 746 S.E.2d 509, 530 (2013).

Contrary to husband's arguments, the record supports the circuit court's rulings. We find that the circuit court did not abuse its discretion in awarding sole custody to wife and not awarding visitation to husband.

Finally, husband does not provide any legal authority to support his argument that the circuit court erred in ordering him to undergo a psychological evaluation by a particular therapist and to pay for the evaluation. Rule 5A:20(e) mandates that appellant's opening brief include "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Husband did not comply with Rule 5A:20(e) because his opening brief does not contain any principles of law or citation to legal authorities to fully develop his argument. Husband has the burden of showing that reversible error was committed. See Burke v. Catawba Hosp., 59 Va. App. 828, 838, 722 S.E.2d 684, 689 (2012). "Unsupported assertions

- 22 -

of error do not merit appellate consideration." Fox v. Fox, 61 Va. App. 185, 199-200, 734 S.E.2d 662, 669 (2012) (quoting Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008)). We find that husband's failure to comply with Rule 5A:20(e) is significant, so we will not consider this argument. See Fadness, 52 Va. App. at 851, 667 S.E.2d at 866 ("If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention."); Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008).

*Husband's testimony*

Husband argues that the circuit court erred by "pervasively prevent[ing] [husband] from testifying by improperly limiting his attempts to lay a foundation and place his answers in context, while giving [wife] wide latitude." Husband asserts that some of his testimony was "improperly clouded by improper objections that the testimony was 'non-responsive.'" He also claims that he was "badgered with inconsistent objections of not laying a foundation yet then having his answers struck when he was laying that foundation." Furthermore, he argues that "it is impossible to read through the testimony without being struck by the inconsistent treatment of [his] testimony." Husband does not provide any specific examples or citations to the record.

"Virginia courts have consistently held that 'the conduct of a trial is committed to the sound discretion of the trial court.'" Via v. Commonwealth, 42 Va. App. 164, 181, 590 S.E.2d 583, 591 (2004) (quoting Justus v. Commonwealth, 222 Va. 667, 676, 283 S.E.2d 905, 910 (1981), cert. denied, 455 U.S. 983 (1982)). "[C]ases should not be reversed merely because the judge was impatient, or because he of his own motion ruled out improper testimony and objected to unnecessary repetition; even tilts with counsel are not sufficient." Id. at 182, 590 S.E.2d at 591-92 (quoting Parsons v. Commonwealth, 154 Va. 832, 852-53, 152 S.E. 547, 554 (1930)). "To warrant a reversal [the error] must be substantial; otherwise litigation would be

interminable." Id. at 182, 590 S.E.2d at 592 (quoting Parsons, 154 Va. at 852-53, 152 S.E. at 554). "This court has no duty to deduce bias from the record." Cunningham v. Commonwealth, 2 Va. App. 358, 365, 344 S.E.2d 389, 393 (1986).

As we did in Via, "[w]e find no such substantial prejudice here, nor has [husband] alleged any specific prejudice." Via, 42 Va. App. at 182, 590 S.E.2d at 592. Moreover, husband has not proffered the testimony that was excluded from testimony; therefore, we cannot determine if the circuit court made any error in sustaining the objections. Ray, 55 Va. App. at 649, 688 S.E.2d at 880. In reviewing the totality of the record, we do not find that that there was any bias or inconsistent treatment of husband.

*Attorney's fees*

Wife asks this Court to award her attorney's fees incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Having reviewed and considered the entire record in this case, we hold that wife is entitled to a reasonable amount of attorney's fees, and we remand for the circuit court to set a reasonable award of attorney's fees and costs incurred by wife in this appeal. Rule 5A:30(b).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed. We remand this case to the trial court for determination and award of the appropriate appellate attorney's fees, which also should include any additional attorney's fees incurred at the remand hearing.

Affirmed and remanded.